# EXHIBIT 1

AM 7692772.1

|  |  |
|---|---|
| KNIGHT CAPITAL LLC, and IBUSINESS FUNDING, LLC, | IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA |
| Plaintiffs, | GENERAL JURISDICTION DIVISION |
| vs. | CASE NO.: |
| JOSEPH M. EVANS, | |
| Defendant. | |

## COMPLAINT

Plaintiffs, KNIGHT CAPITAL LLC and IBUSINESS FUNDING, LLC, by and through undersigned counsel, bring an action against Defendant, JOSEPH M. EVANS, and in support of their claims for affirmative relief, allege the following:

## PARTIES

1. Plaintiff KNIGHT CAPITAL LLC ("Knight Capital") is a Delaware limited liability company with its principal place of business in Broward County, Florida.

2. Plaintiff IBUSINESS FUNDING, LLC ("iBusiness Funding", collectively with Knight Capital, the "Employer Group") is a Delaware limited liability company with its principal place of business in Broward County, Florida. iBusiness Funding is a wholly owned subsidiary of Knight Capital.

3. Defendant JOSEPH M. EVANS ("EVANS") is a resident of Cecil County, Maryland, is over 18 years of age, and is other otherwise *sui juris*.

## JURISDICTION AND VENUE

4. This is a civil action in which the amount in controversy exceeds $50,000.00, exclusive of court costs, pre-judgment interest, and reasonable attorneys' fees.

1

5. This Court has jurisdiction over EVANS pursuant to the Confidentiality and Proprietary Rights Agreement ("Confidentiality Agreement") at issue herein, which contains a mandatory forum selection clause requiring any action or proceeding related thereto be brought in Broward County, Florida. EVANS irrevocably submitted to the exclusive jurisdiction of this court and waived the defense of forum non conveniens. A redacted copy of the Confidentiality Agreement is attached hereto as Exhibit ("Ex.") A.

6. Additionally, this Court has general and specific jurisdiction over EVANS pursuant to provisions of § 48.193, Florida Statutes. Specifically, EVANS regularly engaged in and conducted business in the State of Florida and committed tortious acts within this state as detailed herein. *See*, § 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6)(a). EVANS is also engaged in substantial and not isolated activity within the State of Florida. *See* § 48.193(2).

7. Venue is proper in Broward County because EVANS not only submitted to its exclusive jurisdiction, but EVANS is a non-resident subject to the jurisdiction of Florida courts and, as such, may be sued in any county within the State of Florida.

## FACTUAL ALLEGATIONS

8. Defendant EVANS is an ex-employee of Knight Capital. EVANS began his employment with Knight Capital on or about February 23, 2023, and was hired to provide services to iBusiness Funding. iBusiness Funding offers a wide variety of services, including but not limited to, financial and lending services to banks, lenders, brokers, and financial institutions (collectively "Client(s)") nationwide.

9. EVANS executed the Confidentiality Agreement as a material condition of his employment. The Confidentiality Agreement was entered into by Knight Capital, "on behalf of itself, its subsidiaries and other corporate affiliates", including iBusiness Funding.

10. The Confidentiality Agreement defines Confidential Information as "confidential, secret and proprietary documents, materials, data and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses and existing and prospective customers, suppliers, investors and other associated third parties." Ex. A, ¶ 1 (a).

11. EVANS agreed that the Confidentiality Agreement would be governed by Florida law, and that the venue for any dispute would be brought exclusively in Broward County, Florida: "This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Broward. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue." Ex. A, ¶ 9.

12. EVANS attended multiple company events at the Employer Group's principal place of business in Broward County, Florida. EVANS utilized equipment, including a laptop, computer monitors, docking stations, etc. owned by the Employer Group and sent to EVANS from its principal place of business in Broward County, Florida. EVANS received payment from Knight Capital's bank accounts which were originated and are maintained in Florida. The unlawful acts committed by EVANS caused injury to the Employer Group in Broward County, Florida.

13. To perform his job, EVANS was given access to iBusiness Funding's Confidential Information. EVANS had access to iBusiness Funding's systems and databases, which include Client and prospective Client contact information, as well as specific communications and negotiations that occurred between iBusiness Funding and its Clients and prospective Clients.

3

Further, EVANS was directly involved in forming and maintaining business relationships with Clients and prospective Clients and played a vital role in their recruitment and onboarding.

14. iBusiness Funding's relationships with its Clients and prospective Clients are essential to its business operations. iBusiness Funding has invested significant resources and incurred great expense in cultivating and maintaining its relationships with Clients and prospective Clients over several years.

15. The identity of iBusiness Funding's Clients and Prospective Clients, including key personnel and their contact information (names, e-mail addresses, and telephone numbers), as well as their communications with iBusiness Funding regarding their business plans, business opportunities, and specific financial needs, is Confidential Information that is maintained by the Employer Group.

16. When he executed his Confidentiality Agreement, EVANS affirmed that he "understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by [EVANS] will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate and may also cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties." Ex. A, ¶ 1 (a).

17. EVANS also acknowledged and agreed that all works of authorship and other work product of any nature whatsoever that are created, prepared, authored, conceived, or reduced to practice, individually or jointly with others during the period of his employment, and relating in

4

any way to the business or contemplated business of the Employer Group are the sole and exclusive property of the Employer Group. Ex. A, ¶ 2 (a).

18. The Employer Group learned that EVANS has been misappropriating iBusiness Funding's Confidential Information through unauthorized and unlawful use and dissemination.

19. EVANS knew that he had a duty of care to protect iBusiness Funding's Confidential Information pursuant to the Confidentiality and Proprietary Rights Agreement he executed.

20. EVANS intentionally breached his duty of care and violated the terms of his Confidentiality Agreement by unlawfully misappropriating and disseminating iBusiness Funding's Confidential Information for his own gain as well as the gain of his new employer, Lenders Cooperative.

21. EVANS further agreed that he "will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, investors and other associated third parties. Since the damage incurred to the Employer Group could be devastating and impossible to calculate, the Parties agree that the liquidated damages for any such disclosure completed or attempted in violation of this paragraph shall be valued at $10,000 per publication." Ex. A, ¶ 5.

22. As a direct and proximate result of EVANS' unlawful conduct, the Employer Group has sustained substantial damages.

## COUNT I
## BREACH OF CONTRACT
**(Unauthorized use of Confidential and Proprietary Information)**

23. The Employer Group incorporates and re-alleges the allegations in paragraphs 1-22 above as if set forth fully herein.

24. At the inception of his employment with the Employer Group, EVANS executed a Confidentiality Agreement wherein EVANS agreed not to disclose, directly or indirectly, Employer Group's Confidential Information outside of his normal course of employment. Ex. A, ¶ 1(a).

25. The Confidentiality Agreement defines "Confidential Information", in part, as information not known to the general public, relating to business practices, methods, research, strategies, negotiations, pricing information, market studies, sales information, databases, sales information, and customer/merchant information. Ex. A, ¶ 1 (b).

26. EVANS breached the terms of the Confidentiality Agreement when he disclosed iBusiness Funding's Confidential Information to third parties, including his current employer, Lenders Cooperative. Specifically, EVANS used iBusiness Funding's Confidential Information, including offer terms and prior negotiations, to steer prospective Clients away from iBusiness Funding, and aid Lenders Cooperative in securing those prospective Clients.

27. Further, Employer Group recently learned that EVANS is engaging in the unauthorized use of iBussiness' proprietary information by hosting a "30 at Noon" webinar series for his new employer, Lenders Cooperative, wherein he is presenting a substantially similar webinar as the "THIRTY@Noon" created and hosted by iBusiness Funding, which EVANS' participated in during the term of his employment.

28. The Employer Group has sustained damages to its business as a direct and proximate result of EVANS' intentional breach of his Confidentiality Agreement.

WHEREFORE, the Employer Group demands judgment for damages against Defendant EVANS, plus court costs pursuant to Fla. Stat. §57.041, prejudgment interest, equitable relief in

the form of an injunction as provided for in the Confidentiality Agreement, and such other and further relief that this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT
### (Breach of Non-Disparagement Provision)

29. The Employer Group incorporates and re-alleges the allegations in paragraphs 1-22 above as if set forth fully herein.

30. At the inception of his employment with the Employer Group, EVANS executed the Confidentiality Agreement, which included a non-disparagement provision.

31. EVANS agreed not to make any defamatory or disparaging remarks, comments, or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, investors and other associated third parties. Ex. A, ¶ 5.

32. EVANS breached the terms of the Confidentiality Agreement on numerous occasions when he made defamatory and disparaging remarks to third parties concerning iBusiness Funding, its employees, and its subsidiaries and/or affiliates. Specifically, EVANS disparaged iBusiness Funding to current and former employees, Clients and/or prospective Clients, and to various other individuals/entities in the finance industry and at industry conferences.

33. The Employer Group has sustained damage to its business as a direct and proximate result of EVANS' breach of the non-disparagement provision of his Confidentiality Agreement.

WHEREFORE, the Employer Group demands judgment for damages against Defendant EVANS, plus court costs pursuant to Fla. Stat. §57.041, prejudgment interest, equitable relief in the form of an injunction pursuant to the Confidentiality Agreement, and such other and further relief that this Court deems just and proper.

# COUNT III
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

34. iBusiness Funding incorporates and re-alleges the allegations in paragraphs 1-22 above as if set forth fully herein.

35. iBusiness Funding had and continues to have business relationships with several Clients and prospective Clients in the finance industry. EVANS gained knowledge of the business relationships that existed between iBusiness Funding and its Clients and prospective Clients.

36. EVANS intentionally and unjustifiably interfered with the business relationships between iBusiness Funding and its Clients and/or prospective Clients. Specifically, EVANS used iBusiness Funding's Confidential Information, including offer terms and prior negotiations, to steer prospective Clients away from iBusiness Funding, and aid Lenders Cooperative in securing those prospective Clients.

37. Employer Group was damaged as a direct and proximate result of EVANS' unlawful interference with its advantageous business relationships with its Clients and/or prospective Clients.

WHEREFORE, iBusiness Funding demands judgment for damages against Defendant EVANS, plus court costs pursuant to Fla. Stat. §57.041, prejudgment interest, equitable relief, and such other and further relief that this Court deems just and proper.

*Respectfully submitted,*

By: */s/ Phillip Yates*
Phillip Yates – Florida Bar No.: 106244
Jeremy Singer – Florida Bar No.: 92049
*Attorneys for the Plaintiffs*
110 SE 6th Street, Suite 700
Ft. Lauderdale, Florida 33301
phillip.yates@knightcapitalfunding.com
Jeremy.singer@ibusinessfunding.com
Tel: 786.870.4769; Fax: 866.293.8143

EXHIBIT A

### CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT

This Employee Confidentiality and Proprietary Rights Agreement ("**Agreement**") is entered into by and between Knight Capital, LLC, a Delaware limited liability company, (the "**Employer**") on behalf of itself, its subsidiaries and other corporate affiliates (collectively referred to herein as the "**Employer Group**"), and __Joseph M Evans__ (the "**Employee**") (the Employer and the Employee are collectively referred to herein as the "**Parties**") as of __23__ day of __February__, 20__23__ (the "**Effective Date**").

In consideration of the Employee's employment by the Employer, which the Employee acknowledges to be good and valuable consideration for his/her obligations hereunder, the Employer Group and the Employee hereby agree as follows:

1. **Confidentiality and Security.**

    (a) **Confidential Information.** The Employee understands and acknowledges that during the course of employment by the Employer, he/she will have access to and learn about confidential, secret and proprietary documents, materials, data and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses and existing and prospective customers, suppliers, investors and other associated third parties ("**Confidential Information**"). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate and may also cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

    (b) For purposes of this Agreement, "**Confidential Information**" includes, but is not limited to, all information disclosed prior to, on or after the Effective Date of this Agreement that is not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, documents, credit scoring models, sizing calculators, research, operations, strategies, contracts, transactions, negotiations, trade secrets, computer programs, computer software, databases, manuals, records, financial information, accounting information, legal information, marketing and advertising information, pricing information, personnel information, employee lists, internal controls, security

Page 1

procedures, market studies, sales information, formulae, customer/merchant information, customer/merchant lists of the Employer Group or its businesses or of any other person or entity that has entrusted information to the Employer Group in confidence. All copies of all such information referred to in the immediately preceding sentence, and all memoranda, notes, models, derivatives, compilations, reports, analyses, forecasts, summaries, data, interpretations, studies and other materials prepared by Employee containing, reflecting, interpreting or based upon, in whole or in part, any such information is deemed Confidential Information, itself Confidential Information shall also include all derivatives thereof, including, but not limited to, models, extrapolations, formulae, enhancements, or any other dataset that was derived exclusively or in part from the Confidential Information. Additionally, Confidential Information shall also include any and all technical specifications, including, but not limited to, computer terminal specifications, the source code developed from such specifications, all derivative and reverse-engineered works of the specifications, and the documentation and software related to the source code, the specifications and the derivative works.

The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that Confidential Information developed by him/her in the course of his/her employment by the Employer shall be subject to the terms and conditions of this Agreement as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public, provided that such disclosure to the public is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

**(c)** **Disclosure and Use Restrictions.** The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer Group) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer with the prior

Page 2

| T: 800.701.2317 | F: 866.293.8143 | M: 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | W: iBusinessFunding.com |

express written consent of an authorized officer acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer Group, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior express written consent of an authorized officer acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent), and (iv) without limiting the foregoing, Employee expressly agrees that he/she will not save, store, share, forward or otherwise transfer any Confidential Information to any personal electronic devices, including without limitation: laptops, computers, external hard drives, google drives, personal e-mails, thumb drives or other removable information storage devices or cellular telephones.



| T: 800.701.2317 | F: 866.293.8143 | M: 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | W: iBusinessFunding.com |



██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████
████████████████

**(e)** **Duration of Confidentiality Obligations.** The Employee understands and acknowledges that his/her obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to any such Confidential Information (whether before or after he/she begins employment by the Employer, and whether prior to the Effective Date of this Agreement) and shall continue during and after his/her employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2. **Proprietary Rights.**

**(a)** **Work Product.** The Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries, ideas and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by the Employee individually or jointly with others during the period of his/her employment by the Employer and relating in any way to the business or contemplated business, research or development of the Employer (regardless of when or where the Work Product is prepared or whose equipment or other resources is used in preparing the same) and all printed, physical and electronic copies, all improvements, rights and claims related to the foregoing, and other tangible embodiments thereof (collectively, "**Work Product**"), as well as any and all rights in and to copyrights, trade secrets, trademarks (and related goodwill), mask works, patents and other intellectual property rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and continuations, divisions, continuations-in-part, reissues, extensions and renewals thereof (collectively, "**Intellectual Property Rights**"), shall be the sole and exclusive property of the Employer.

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

Page 4



Page 5

| T: 800.701.2317 | F: 866.293.8143 | M: 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | W: iBusinessFunding.com |



Page 6



     **5.**    **Non-disparagement.** The Employee agrees and covenants that he/she will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, investors and other associated third parties. Since the damage incurred to the Employer Group could be devastating and impossible to calculate, the Parties agree that the liquidated damages for any such disclosure completed or attempted in violation of this paragraph shall be valued at $10,000 per publication. Employee further authorizes the immediate removal of any such disclosure or opinion from any third-party media service as unauthorized.  This Section does not, in any way, restrict or impede the Employee from exercising his/her rights under Section 7 of the National Labor Relations Act or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. The Employee shall promptly provide written notice of any such order to an authorized officer of the Employer Group within forty-eight hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or seek confidentiality protections, as determined in the Employer's sole discretion.

| **T:** 800.701.2317 | **F:** 866.293.8143  | **M:** 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | **W:** iBusinessFunding.com |



7.  **Remedies.**  The Employee acknowledges that the Employer's Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate. In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.  With respect to the unauthorized disclosure of a confidential merchant information, the Parties further agree that such damage incurred to the Employer Group could be devastating and impossible to calculate, and therefore, the Parties agree that the liquidated damages for any such breach be valued at $10,000 per unauthorized disclosure of a specific merchant account or information.  Notwithstanding the foregoing, the aforementioned relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of

Page 8

| T: 800.701.2317 | F: 866.293.8143 | M: 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | W: iBusinessFunding.com |

relief. The Employee further acknowledges that each member of the Employer Group is an intended third-party beneficiary of this Agreement.



9. **Governing Law; Jurisdiction and Venue.** This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Broward. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.



| T: 800.701.2317 | F: 866.293.8143 | M: 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | W: iBusinessFunding.com |



**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

| EMPLOYEE | KNIGHT CAPITAL, LLC |
|---|---|
| By: *Joseph M Evans* | By: *William A Cockrill* |
| Name: Joseph M Evans | Name: William A Cockrill |
| | Title: VP of HR |

| T: 800.701.2317 | F: 866.293.8143 | M: 9 East Loockerman St., Suite 202-543, Dover, DE 19901 | W: iBusinessFunding.com |



Page 11